IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION
_____

| | | |
|---|---|---|
| ANDRE HURREY, PRO SE, | § | |
| A.K.A. ANDRE WILLIAM HURREY, | § | |
| TDCJ-CID No. 1413337, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:07-CV-0226 |
| | § | |
| UNKNOWN TEXAS TECH | § | |
| MEDICAL PERSON "A" | § | |
| also known as | § | |
| DAVID CONTRERAS, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

Plaintiff ANDRE HURREY, also known as ANDRE WILLIAM HURREY, acting pro se and while a prisoner incarcerated in the Texas Department of Criminal Justice, Correctional Institutions Division, has filed suit pursuant to Title 42, United States Code, section 1983 complaining against four unknown corrections officers, a medical caregiver, and the State of Texas and has been granted permission to proceed in forma pauperis. Defendant THE STATE OF TEXAS was dismissed November 14, 2008. Defendants UNKNOWN TDCJ CORRECTIONS OFFICER "A", UNKNOWN TDCJ CORRECTIONS OFFICER "B", UNKNOWN TDCJ CORRECTIONS OFFICER "C", and UNKNOWN TDCJ CORRECTIONS OFFICER "D" were dismissed November 4, 2009.

On December 2, 2009, DAVID CONTRERAS answered as defendant UNKNOWN TEXAS TECH MEDICAL PERSON "A".

On December 3, 2009, the Court conducted a second[1] hearing in the instant cause. At the hearing, defendant argued he was entitled to qualified immunity and, additionally, that, in any event, plaintiff failed to exhaust administrative remedies before filing suit. Evidence was received from both sides and argument was presented. At the conclusion of the hearing, plaintiff was given an additional period of time to submit the grievances which, he argued evinced exhaustion of administrative remedies.

Plaintiff filed those documents on December 16, 2009, with a pleading entitled Submission of Court Ordered Documents.

Plaintiff complains that, on May 8, 2007, he was forcibly catheterized by the defendant nurse CONTRERAS in order to obtain a urine sample. Plaintiff claims this constituted aggravated sexual assault in violation of Texas law, a violation of the safe prisons act, and the performance of an unauthorized and unnecessary medical action.

Plaintiff requests an award of compensatory damages, a court order prohibiting TDCJ-CID personnel from ever forcibly catheterizing anyone without a court order, that the defendants be terminated from their employment, and that criminal charges be brought against them.

## JUDICIAL REVIEW

When a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, the Court must evaluate the complaint and dismiss it without service of process, *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990), if it is frivolous[2], malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is

---

[1] The first hearing was conduct on December 16, 2008; however, records were not produced by TDCJ and no prison officials were present to interpret records.

[2] A claim is frivolous if it lacks an arguable basis in law or in fact, *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *see* also, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

immune from such relief. 28 U.S.C. 1915A; 28 U.S.C. 1915(e)(2). The same standards will support dismissal of a suit brought under any federal law by a prisoner confined in any jail, prison, or other correctional facility, where such suit concerns prison conditions. 42 U.S.C. 1997e(c)(1). The Magistrate Judge has reviewed plaintiff's pleadings and has viewed the facts alleged by plaintiff, along with the records and testimony presented at the December 3, 2009 evidentiary hearing to determine if his claims present grounds for dismissal or should proceed to answer by the defendants.

## THE LAW AND ANALYSIS

**OFFICIAL CAPACITY CLAIMS**

The Eleventh Amendment has been interpreted by the Supreme Court to bar suits by individuals against non-consenting states. *Bd. of Trs. of the Univ. of Ala. v. Garrett,* 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). In addition, the principle of state-sovereign immunity generally precludes actions against state officers in their official capacities, *see Edelman v. Jordan,* 415 U.S. 651, 663-69, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), subject to an established exception: the *Ex parte Young* doctrine. Under *Ex parte Young,* "a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law." *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), *see, also, Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)(the Eleventh Amendment grants the States an immunity from retroactive monetary relief, but state officers are not immune from prospective injunctive relief).

Therefore, except as to his request for injunctive relief, plaintiff's claims against the sole remaining defendant, defendant CONTRERAS, in his official capacity, are barred by the Eleventh Amendment.

"Because [Eleventh Amendment] sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice." *Warnock v. Pecos County, Texas,* 88 F.3d 341, 343 (5th Cir.1996).

**INDIVIDUAL CAPACITY CLAIMS AGAINST DEFENDANT CONTRERAS**

**Criminal Charges**

Plaintiff cannot obtain criminal charges against a defendant through this lawsuit. See *Linda R.S. v. Richard D.,* 410 U.S. 614, 619, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973) (a private citizen does not have judicially cognizable interest in the prosecution or non-prosecution of another person). Since plaintiff does not have a judicially cognizable interest in the criminal prosecution of another person, he lacks standing to even raise such a claim. Id. at 619. This claim lacks an arguable basis is law and is frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

**Employment Termination**

To the extent plaintiff is demanding that defendant CONTRERAS be fired from his job, the federal courts are not personnel directors of state prison systems, and such relief is unattainable in this action. *See, Maxton v. Johnson,* 488 F.Supp. 1030, 1032, n. 2 (D.S.C.1980), citing *United States v. White County Bridge Commission,* 275 F.2d 529, 535 (7th Cir.) (a federal district court lacks the inherent power to hire or remove officials not within the executive control of that federal district court), *cert. denied sub nomine, Clippinger v. United States,* 364 U.S. 818,

4

81 S.Ct. 50, 5 L.Ed.2d 48 (1960). Plaintiff's claim for this relief fails to state a claim on which relief can be granted.

**Exhaustion of Administrative Remedies**

In response to defendant's argument that he had not exhausted administrative remedies before filing suit in federal court, plaintiff argued he had exhausted administrative remedies and could produce a Step 2 grievance to prove that assertion. Plaintiff was provided an opportunity to supplement his evidence before the Court by submitting any documents on which he relied to show exhaustion.

Plaintiff's December 16, 2009, Submission of Court Ordered Documents shows plaintiff relies on five documents to show exhaustion: (1) an I-60 Inmate Request to Official; (2) an Inter-Office Communication; (3) a TDCJ Instructions on How to Write and Submit Grievances sheet; (4) a Step 1 grievance no. 2007178189 submitted June 26, 2007; and (5) an unnumbered Step 2 grievance submitted July 1, 2007.

The incident from which plaintiff's claims arose occurred May 8, 2007. Step 1 grievance no. 2007178189[3] which plaintiff has provided to the Court was submitted to prison officials no earlier than June 26, 2007, the date on which plaintiff signed it. As the TDCJ Instructions on How to Write and Submit Grievances sheet[4] provided by plaintiff shows, TDCJ rules require that a grievance be submitted to prison officials within fifteen days of the incident grieved. Review of plaintiff's Step 1 grievance no. 2007178189 shows it was returned unprocessed because it was untimely, having been submitted more than a month late[5].

---

[3]Plaintiff's December 6, 2009 Submission of Court-Ordered Documents at pages 9 and 10.

[4]Plaintiff's December 6, 2009 Submission of Court-Ordered Documents at pages 7 and 8.

[5]Plaintiff's December 6, 2009 Submission of Court-Ordered Documents at page 10.

Plaintiff's Step 2 grievance[6], signed and presumably submitted July 1, 2007, was not processed.

The response to plaintiff's I-60 inquiry about his Step 2 grievance shows a response that there are no Step 2 grievances documented for plaintiff and asks for the number of the Step 1 grievance[7].

The response to plaintiff's IOC concerning the Step 2 grievance shows plaintiff was informed that he could not submit a Step 2 appeal of his Step 1 grievance no. 2007178189 because the Step 1 grievance had been returned to hm unprocessed due to screening criteria, that is, it was untimely[8].

The Prison Litigation Reform Act exhaustion requirement requires <u>proper</u> exhaustion in compliance with the established deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006).

> The Texas prison system has developed a two-step formal grievance process. The Step 1 grievance, which must be filed within fifteen days of the complained-of incident, is handled within the prisoner's facility. After an adverse decision at Step 1, the prisoner has ten days to file a step 2 grievance, which is handled at the state level. [The Fifth Circuit] has held that a prisoner must pursue a grievance through both steps for it to be considered exhausted.

*Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004)(citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). A "strict approach" is taken to the exhaustion requirement in the Fifth Circuit. *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003). A prisoner must pursue a grievance

---

[6] Plaintiff's December 6, 2009 Submission of Court-Ordered Documents at pages 11 and 12.

[7] Plaintiff's December 6, 2009 Submission of Court-Ordered Documents at page 6, item 1-B.

[8] Plaintiff's December 6, 2009 Submission of Court-Ordered Documents at page 6, item 2-A.

through both steps in order to exhaust the TDCJ grievance process. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004).

The documents presented by plaintiff show he did not <u>properly</u> grieve the issue presented in this lawsuit. He waited until more than a month after expiration of the deadline for submitting a Step 1 grievance before submitting his untimely Step 1 grievance no. 2007178189. That grievance was rejected as untimely. Plaintiff's failure to comply with the established deadlines resulted in a failure to properly exhaust the available administrative remedies.

Therefore, plaintiff's claims arising from the May 8, 2007 forced catheterization are barred by his failure to exhaust administrative remedies before filing suit in federal court in compliance with Title 42, United States Code, section 1997e(a).

**Failure to State a Claim and Qualified Immunity**

Because of plaintiff's pauper status, the Court must evaluate the complaint and dismiss it without service of process, *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990), if it is frivolous[9], malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. 1915A; 28 U.S.C. 1915(e)(2).

Qualified immunity is an affirmative defense which protects public officials from civil liability while performing discretionary functions when such acts or omissions were objectively reasonable in light of clearly established law. *Colston v. Barnhart*, 130 F.3d 96, 99 (5th Cir. 1997) *citing Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir.), *cert. denied*, 506 U.S. 973, 113 S.Ct. 462, 121 L.Ed.2d 371 (19892); *Siegert v. Gilley*, 500 U.S. 226, 233, 111 S.Ct. 1789, 114

---

[9]A claim is frivolous if it lacks an arguable basis in law or in fact, *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *see* also, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

L.Ed.2d 277 (1991). The facts alleged, taken in the light most favorable to the party asserting the injury, must show that the officer's conduct violated a constitutional right. *Price v. Roark*, 256 F.3d 364, 369 (5th Cir.2001). Also, the constitutional right must be clearly established such that it would be clear to a reasonable officer that his or her conduct was unlawful. *Id.* The Court may address either prong first. *Pearson v. Callahan*, _____ U.S. _____, _____, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009).

For the reasons set forth below, the records and testimony presented at the December 3, 2009 evidentiary hearing show that plaintiff's claim concerning his catheterization, when viewed in the context of his medical care, fails to state a claim on which relief can be granted and that, in any event, defendant CONTRERAS, is entitled to qualified immunity from plaintiff's claims against him.

In response to defendant's assertion of qualified immunity, plaintiff argued there was no medical need for catheterization and, therefore, defendant CONTRERAS was not entitled to qualified immunity.

Testimony was received from Sanford Guzman, Custodian of Records of Texas Tech Managed Care at the Neal Unit, from Dr. Benjamin Leeah, M.D., and from Charles McDuffie, Senior Warden of the Neal Unit.

Plaintiff's medical records, including Clinic Notes - Nursing, were presented and Exhibit 1, 2, and 3 were admitted into the record from those Clinic Notes. The Clinic Notes revealed, in part, that plaintiff quit eating on April 21, 2007, a fact which plaintiff confirms in his own pleadings and by his testimony presented at the December 16, 2008 hearing. After being sworn, Dr. Leeah reviewed plaintiff's medical records from plaintiff's intake at the Neal Unit through his

8

transfer to and stay at the Montford Unit and his return to the Neal Unit. Dr. Leeah noted the Neal Unit medical department was informed on May 7, 2007, that plaintiff had not eaten since April 21, 2007 and would not give a reason. On May 7 plaintiff voluntarily provided a urine sample which showed an abnormally high level of ketones, confirming plaintiff was not eating.

Exhibit 1 is a May 8, 2007 entry from plaintiff's Clinic Notes - Nursing which shows that, in response to plaintiff's refusal to go to the medical department that day to give a urine sample and be weighed, Nurse Waltz went to plaintiff's cell to ask him to give her a urine sample without having to leave his cell. When plaintiff refused, she informed him that the medical department had to get a urine sample and that Dr. Revell would authorize force if necessary. The entry states plaintiff continued to refuse, so Nurse Waltz informed Ms. Anernathy and she called Dr. Revell.

Exhibit 2 is another May 8, 2007 entry from plaintiff's Clinic Notes - Nursing which shows that the urinalysis done the day before showed "x-large ketones" and that plaintiff had repeatedly refused to provide a urine sample that day at the clinic or in his cell. The entry continues:

> [R]eviewed with Dr. Basse, orders received as follows:
>
>> Order is as follows: may use force if necessary to be brought to medical for ua. [M]ay straight cath if needed.

The note is electronically signed by Nurse Abernathy and Dr. Basse.

Exhibit 3 shows plaintiff was escorted to the clinic following Dr. Basse's authorization of use of force and the urine sample was collected by way of a "straight cath using sterile technique" by the defendant Nurse CONTRERAS. The note also reveals the results of the urinalysis showed an extra large amount of ketones. When the nurse attempted to take plaintiff's vital signs, he refused and was escorted from the clinic.

9

Plaintiff's May 9, 2007 Clinic Note reviewed by Dr. Leeah shows that on that date plaintiff agreed to a daily urine sample and weighing and was counseled to drink. Further, Dr. Leeah testified a set of scales were taken to the building were plaintiff was detained so he could be weighed without having to go to the clinic. Plaintiff's medical records showed plaintiff had a low blood pressure, slow heart rate, irregular heartrate, and abnormal urine. Plaintiff provided a daily urine sample up until his transfer to the Montford Unit on May 23, 2009 when it was determined he was a suicide risk.

Dr. Leeah further testified that ketones are a byproduct of fat metabolism and that even a trace amount of ketones in urine raises concerns of a risk to heart and kidneys. He stated it was important to monitor the amount of ketones and that the May 8, 2007 taking of the urine sample by catheterization was medically necessary and reasonable because the previous urinalysis had shown elevated ketones, plaintiff wasn't eating, and plaintiff would not say why he was not eating.

On cross-examination by plaintiff, Dr. Leeah stated that plaintiff did not appear to be in any danger of kidney failure ton May, 7, 8, or 9 of 2007, and just had abnormal urinalyses showing stress on the kidneys. Dr. Leeah characterized plaintiff's need for medical care at that time as a need for "urgent assistance", not "emergency assistance."

Dr. Leeah further elaborated that, while an inmate has the right to refuse certain medical care, in cases where his judgment is poor or there are signs of mental health issues, medical personnel may have to render treatment anyway. He stated that, if an inmate won't tell why he's not eating and has elevated ketones, that is a big enough "red flag" that he is suicidal and triggers an obligation to treat him even without his consent.

Warden Charles McDuffie was also sworn and testified that, in cases such as plaintiff's, medical personnel first contact the inmate and try to informally resolve the problem. They then contact security who try to informally resolve the problem. When all else fails, force is utilized to take the inmate to the clinic where security will assist by restraining the inmate if necessary.

Warden McDuffie testified that, when a doctor authorizes force, that authorization goes to the Warden's office and, when the Warden authorizes the use of force authorized by the doctor, the orders are then carried out by the line officers. That procedure was followed respecting the May 8th incident. Warden McDuffie noted plaintiff's classification and disciplinary records showed that, on May 8, 2007, plaintiff refused the order to come out of his cell and be strip-searched. Chemical force was then utilized. Warden McDuffie explained that any time a prisoner is taken from a segregation cell, he must be strip searched. Warden McDuffie further testified plaintiff's records showed plaintiff received a disciplinary case, was found guilty at the disciplinary hearing, and was punished with the loss of 45 days' goodtime, privilege restriction and a determination that he would remain classified at L3.

Exhibit 5 received by the Court is a copy of the TDCJ Disciplinary Report and Hearing Record for the disciplinary case plaintiff received based on his refusal to submit to a strip search and hand restraints on May 8, 2007. Among other things, it shows plaintiff was found guilty and lost 45 days goodtime.

While the Fifth Circuit has recognized that the taking of a blood or urine sample constitutes a search under the Fourth Amendment, *Kohler v. Englade*, 470 F.3d 1104 (5th Cir. 2006), the circumstances surrounding plaintiff's forced catheterization demonstrate it was not a

search and seizure, *e.g.*, not seeking evidence of contraband, to be examined under the Fourth Amendment, but a medical procedure, subject to challenge under the Eighth Amendment.

The malicious and sadistic use of force to cause harm violates contemporary standards of decency. *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992). In addition, "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Such indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id*.

The evidence of record overwhelmingly demonstrates a licensed physician had determined there was a medical need for monitoring plaintiff's urine sample. Plaintiff does not contest this fact. It is of no consequence whether plaintiff agreed with the physician's determination. It is also of no consequence whether the physician made the determination based upon plaintiff being in need of "urgent assistant" as opposed to "emergency assistance." The key is that a licensed physician made a medical determination that plaintiff's health required monitoring. Plaintiff's refusal to comply with the medical decision resulted in a physician-ordered catheterization and the need was serious enough to justify the use of force. That determination was reviewed and approved by the Warden before force was utilized and an involuntary catheterization was performed by defendant Nurse CONTRERAS using appropriate sterile techniques. Nothing in plaintiff's allegations or anything else before the Court indicates

defendant Nurse CONTRERAS acted unreasonably or in a way that a reasonable person would have known would violate plaintiff's constitutional rights as clearly established at that time.

Defendant CONTRERAS did not even authorize the use of force or make the medical determination that catheterization was necessary. He merely performed the catheterization after a directive from his superiors issued; and plaintiff alleges no fact to show that a substantial risk of serious harm to plaintiff's health or safety would result from it or that defendant Nurse CONTRERAS nor anyone else had knowledge of such a risk and ignored it. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1981, 128 L.Ed.2d 811 (1994). The evidence of record demonstrates beyond question that the forced catheterization did not constitute a malicious and sadistic use of force to cause harm in violation of contemporary standards of decency, *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992), nor did it constitute deliberate indifference to plaintiff's serious medical need. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1981, 128 L.Ed.2d 811 (1994). Thus, by his claims, plaintiff has failed to state a claim on which relief can be granted and it is clear that, in any event, defendant CONTRERAS is entitled to the defense of qualified immunity, as would Dr. Basse if he had been named as a defendant.

Plaintiff appears to argue that court authorization was necessary for the forced catheterization; however, a court order is not required for an involuntary medical procedure. Prison officials are not required to allow an inmate to harm himself or commit suicide by fasting. Even force-feeding an inmate under those circumstances is not a violation of his civil rights. *See, e.g., Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992) (rejecting claim that force-feeding an inmate after seven days on a hunger strike was unconstitutional). A forced catheterization on the

seventeenth day[10] of a hunger strike to monitor plaintiff's well-being is not constitutionally offensive. Although plaintiff maintains he was simply trying to lose weight, prison officials had no way of determining why plaintiff was no longer eating, or, more importantly, whatever his goal, whether he was harming himself. Even if they had known plaintiff was trying to lose weight, that would not relieve them of the duty to provide medical care for plaintiff's serious medical needs, including a determination of whether his self-imposed fast was doing serious harm to his body.

Based on the records reviewed at the December 3, 2009 hearing and the testimony presented by both sides, it is clear that, in addition to being barred by his failure to exhaust administrative remedies, plaintiff's claims against defendant CONTRERAS fail to state a claim on which relief can be granted and that, in any event, defendant CONTRERAS is shielded from those claims by the defense of qualified immunity.

## CONCLUSION

The Court was required to conduct an evidentiary hearing in this case to supplement plaintiff's factual allegations at considerable expense to both the federal government and the Texas Department of Criminal Justice. Plaintiff does not contest the facts adduced at the hearing, only whether, on those facts, his forcible catheterization violated his federally-protected rights. As a result of the hearing, it is clear to the undersigned that not only were plaintiff's constitutional rights not violated, but any temporary pain and discomfort plaintiff suffered was caused by plaintiff's refusal to voluntarily provide a urine sample, an act he necessarily performs each day or several times a day. However extreme the measures authorized by the physician and the

---

[10]At the December 2008 hearing, plaintiff estimated his refusal occurred on the twenty-first day., but evidence at the December 2009 hearing shows medical records indicated it was the seventeenth day of plaintiff's fast..

14

Warden may have been, this entire episode and this lawsuit could have been easily avoided by plaintiff if he, at no burden to himself whatsoever, had simply complied with TDCJ's reasonable request for a urine sample.

**RECOMMENDATION**

For the reasons set forth above and pursuant to Title 28, United States Code, sections 1915A and 1915(e)(2), as well as Title 42, United States Code, section 1997e(a), it is the RECOMMENDATION of the Magistrate Judge to the United States District Judge that the Civil Rights Claims for monetary relief by plaintiff ANDRE HURREY, also known as ANDRE WILLIAM HURREY, pursuant to Title 42, United States Code, section 1983 against defendant UNKNOWN TEXAS TECH MEDICAL PERSON "A", also known as DAVID CONTRERAS, IN HIS OFFICIAL CAPACITY be DISMISSED WITHOUT PREJUDICE PURSUANT TO RULE 12(b)(1); plaintiff's claim against defendant CONTRERAS IN HIS INDIVIDUAL CAPACITY FOR CRIMINAL CHARGES BE DISMISSED WITH PREJUDICE AS FRIVOLOUS; and his claim against defendant CONTRERAS IN HIS INDIVIDUAL CAPACITY FOR EMPLOYMENT TERMINATION be DISMISSED WITHOUT PREJUDICE FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED.

As to plaintiff's remaining Civil Rights claims for relief against defendant UNKNOWN TEXAS TECH MEDICAL PERSON "A", also known as DAVID CONTRERAS, IN HIS INDIVIDUAL CAPACITY, it is the opinion of the Magistrate Judge and RECOMMENDATION to the United States District Judge that, drawing all reasonable inferences in favor of the nonmoving party, defendant has shown there is no material issue of disputed fact which precludes entry of summary judgment in the instant cause and that PLAINTIFF'S

REMAINING CLAIMS AGAINST DEFENDANT CONTRERAS IN HIS INDIVIDUAL CAPACITY ARE BARRED BY FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES BEFORE FILING SUIT IN FEDERAL COURT, TITLE 42, UNITED STATES CODE, SECTION 1997e(a), THAT PLAINTIFF HAS FAILED TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED, AND THAT, IN ANY EVENT, DEFENDANT CONTRERAS IS ENTITLED TO QUALIFIED IMMUNITY. Federal Rules of Civil Procedure 56(c).

INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 15th day of September, 2010.

*[signature]*
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

### \* NOTICE OF RIGHT TO OBJECT \*

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).